Colquitt, governor, *vs.* Bond *et al.*

---

## COLQUITT, governor, *vs.* BOND *et al.*

1. That the sheriff in charge of a prisoner obtained a blank bond from the clerk of the superior court, filled it up, accepted the securities and returned the bond to the clerk, did not make it void as a voluntary bond.
2. That the offence for which bail was taken was described in the bond as "assault and attempt to murder," while the indictment, when found, described the offence as being assault with intent to murder, did not render the recognizance void as a voluntary bond.
3. Where the bond was taken for the appearance of a prisoner at a specified term of court, from day to day, and from term to term, to answer to a bill of indictment for the offence of "assault and attempt to murder (returned by the grand jury of said county as true)," the recognizance was not rendered void as a voluntary bond because no indictment had been found when it was executed, and none was found until the appearance term, it appearing that the principal had been committed for the same offence as that for which the indictment was found, and that this bond was given and a release from custody procured thereunder. To hold the sureties discharged was error.

(*a.*) Ambiguous words in a bond may be explained by the light of surrounding circumstances.

September 12, 1882.

Criminal Law. Bonds. Before Judge BROWN. Cherokee Superior Court. February Term, 1882.

W. W. Holcombe swore out a warrant against Bond, charging in his affidavit that the defendant had "made a violent assault upon deponent with attempt to murder." On the trial before the magistrate, the defendant was committed. He at first gave bond, but his sureties subsequently delivered him to the sheriff. Not desiring to go to jail, he gave to the sheriff the bond set out

in the decision. At that time, no indictment had been returned against him. An indictment for assault with intent to murder was returned at the next term of the court. Upon his failure to answer the case when called, the solicitor general proceeded to forfeit the recognizance. The sureties pleaded that the bond did not show that it was taken by any one authorized to accept bonds, and that no indictment having been returned at the time the bond was given, it was a nullity as to the sureties.

The case was submitted to the presiding judge without a jury. He sustained the plea, and held that the sureties were discharged from liability, whereupon the plaintiff excepted.

GEORGE F. GOBER, solicitor general, for plaintiff in error.

H. W. NEWMAN; B. F. PAYNE; C. D. PHILLIPS, for defendants.

JACKSON, Chief Justice.

On the issue of the forfeiture by *scire facias* of the following bond against the sureties thereto, submitted by consent to the judgment of the court without the intervention of a jury, judgment was pronounced against the state, to which the solicitor general, in the name of the state, excepted, and the case is before us for for review.

This is the bond :

"GEORGIA—Cherokee County.
*Know all Men by these Presents:*

That we, W. L. D. Bond, principal, and J. M. McAfee and A. B. Coggins, securities, are held and firmly bound unto his excellency, Alfred H. Colquitt, governor of said state, and his successors in office, in the penal sum of two hundred and fifty dollars, for the true payment whereof we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Signed with our hands, sealed with our seals, and dated this 18th day of December, 1880.

The condition of the above obligation is such, that if the above bound W. L. D. Bond shall personally be and appear at the superior court of said county, to be held on the 4th Monday in February next, from day to day, and from term to term, then and there to answer to a bill of indictment, for the offence of assault with attempt to murder, (returned by the grand jury of said county as true) and shall not depart thence without the leave of said court, then the above obligation to be null and void, else to remain in full force and virtue. And the better to secure the payment of this bond, in the event of forfeiture, we each, for ourselves and families, and as the head of our respective families, renounce and waive all right and benefit of the homestead and exemption laws of this state, whether the same be guaranteed by constitutional or legislative provisions providing for homesteads and exemptions, to the people of Georgia.

Approved by

W. L. D. BOND, (L. S.)
A. B. COGGINS, (L. S.)
J. M. MCAFEE, (L. S.)"

The fact is, that no indictment had been returned at the date of the bond, but it was found true and returned at the term at which the defendant was to appear and answer.

The condition of the bond recites that at that term he is to appear, and " from day to, day, and from term to term, then and there to answer to a bill of indictment for the offence of an assault and attempt to murder (returned by the grand jury of said county, as true)," etc.

Is the bond good as a voluntary bond, and was it broken when the defendant failed to appear?

We do not think it void as a voluntary bond because the sheriff took it, or the offence described in it is called " an assault and attempt to murder," and not an assault with intent to murder, which is the statutory name, and that set out in the bill of indictment when preferred and found. 22 Ga., 417; 4 Ib., 331.

Does the clause in the condition of the bond, in brackets, as it is in the bond, thus: " [returned by the grand jury of said county]," where none was returned at the date of the bond, render it void?

No bill of indictment of any sort had then been returned against this defendant. So that the bond could not refer to any theretofore returned. The words, then, must refer to some bill to be thereafter returned, and the time when such a charge would be put in shape and acted on by the grand jury and returned by them, is the term at which the indictment in evidence was returned. So that the words in brackets either mean nothing or they mean that indictment. If nothing, they are surplusage; if they refer to the indictment put in evidence, the bond is good as a voluntary bond, and may be forfeited as such. The enclosure of the words in brackets, too, is somewhat significant, making a sort of side-bar explanation of what goes before; and reading the words in connection with the contract previously made to be and appear at the term when the bill was returned, renders the understanding of the parties pretty clear, if not clearly conclusive, that the bill of indictment found at the appearance term was that which defendant and sureties agreed that he should be present to answer. At all events, under all the facts in evidence, the contract means nothing if it does not mean an obligation to have defendant present to answer the offence when a bill of indictment therefor should be found at the time he agreed to be present and remain till the case was disposed of. See 4 *Ga.*, 331, *supra;* 62 *Ga.*, 449.

That the words in brackets may be explained by outside facts, and the true contract be ascertained, see 62 *Ga.*, 702, 705, last paragraph of opinion.

Judgment reversed.